# UNITED STATES DITRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ADAM STARKE** | ) CASE NO.: 10-CV-1225 |
| | ) |
| *On his behalf individually and on behalf of* | ) JUDGE NICOLAS G. GARAUFIS |
| *all other persons similarly situated,* | ) |
| | ) MAGISTRATE JUDGE ANDREW L. |
| Plaintiffs, | )    CARTER |
| | ) |
| vs. | ) AMENDED **COMPLAINT -** |
| | )    **CLASS ACTION** |
| **UNITED PARCEL SERVICE, INC.** | ) |
| | ) |
| Defendant. | ) |

1.  This is a class action brought by Plaintiff, Adam Starke, on behalf of himself and others similarly situated, estimated to number tens of thousands, who have sustained damages, and are entitled to a refund, arising out of defendant United Parcel Service, Inc. ("UPS") breach of contract in failing to provide promised, guaranteed Next Day Air Service to its New York customers who, under special contractual arrangements, paid a premium for such service, as well as to customers in Massachusetts, Connecticut, Rhode Island, New Jersey, Pennsylvania, Maryland and Washington D.C. (collectively the eight geographic areas are "Affected Areas"), but did not receive such service and have not been and, absent relief in this case will not be, afforded a refund.

2.  Jurisdiction is predicated upon the Class Action Fairness Act of 2005 (CAFA), which expands this Court's diversity jurisdiction for certain class actions. PL 109-2, § 9, set out as a note to 28 U.S.C. § 1332, 119 Stat. 4 (2005). This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5 Million, exclusive of interest and costs, and this is a class action in which Class members and UPS are citizens of different states.

3. Venue is proper under 28 U.S.C. § 1391. UPS does business throughout this district and a substantial percentage of the contracts, events and omissions giving rise to Plaintiff's claims occurred in this district.

4. Plaintiff Adam Starke ("Starke") is, and was at all relevant times, a resident of Brooklyn, New York.

5. Defendant United Parcel Services, Inc. ("UPS") is incorporated in the state of Ohio and maintains its principal place of business at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328.

6. UPS is a shipping company, which ships letters and packages ("Parcels") for the general public of New York and, more generally, Affected Areas. On information and belief UPS picks up/receives Parcels on its own behalf from its UPS Stores and also picks up Parcels from hundreds or thousands of franchisees and authorized agents throughout New York and other Affected Areas who act as freight forwarders of Parcels to UPS, which acts as Carrier.

7. UPS offers a range of guaranteed services, e.g. ground carriage, Second Day Air, Next Day Air, Next Day Early Delivery, Next Day Air Saver, Express Critical and the like. The more prompt the delivery of the Parcel, the greater the premium paid and, consequently, the higher the charge to the shipper. A typical marketing claim found on the UPS website is: " UPS Next Day Air Early A.M. Insist on guaranteed early morning delivery for your time-critical shipments." Industry sources report that in recent times UPS enjoys a yield of $21.95 per Parcel shipped Next Day Air. UPS's Form 10-K filed with the U.S. Securities and Exchange Commission for the Quarter ended June 30, 2009 discloses a domestic (U.S.) Next Day Air volume of 1,185,000 Parcels per day. Timely delivery is the essence of bargain made by UPS with its shippers, who could use United States First Class Mail, and even overnight delivery without the UPS Guarantee, for a small-to-moderate fraction of the UPS cost.

8. UPS refers to its Next Day Air, Next Day Air Early Delivery and Next Day Air Saver (collectively referred to as "Next Day Air") as "guaranteed" in print media, on its website and in other media, and UPS's tariff documents likewise set forth a Guarantee and its obligations upon breach thereof:

UPS guarantees on-schedule delivery of packages shipped via the following services, where available, to all 50 states and Puerto Rico:
- UPS Air Services

> In the event UPS fails to attempt delivery within the time published on the UPS website, or as provided when 1-800-PICK- UPS® is called, UPS, at its option, will either credit or refund the transportation charges for each such package to the payer only, upon request, provided the conditions set forth in the UPS Service Guarantee are met. Transportation charges do not include other fees or charges that may be assessed by UPS including, but not limited to, fuel surcharges.

9. The role of carrier, including its control of its freight forwarders and its special knowledge, which shippers do not have, of transport and air transport conditions, has been held to create a fiduciary obligation. U.S. v. Ventura, 724 F.2d 305 (2d Cir. 1983). Given its special contractual arrangements with Next Day Air customers, UPS is obligated to transport goods with a high level of diligence and to make delivery (including attempts to deliver where the recipient is unavailable or refuses to sign) of goods within the time promised; or, conversely, UPS is not permitted to charge, or retain, premium delivery rates for packages it knows, or should know, cannot be timely delivered. Though not an insurer of timely delivery, UPS is liable in breach of contract for unjustified delay. Absent an unavoidable accident or such occurrences as could not have been anticipated in the exercise of reasonable prudence, diligence or care, UPS is not entitled to retain its Next Day Air customers' monies where it fails to attempt delivery as published on its website. UPS may not by contract exempt itself from refund liability for its own unexcused failure to discharge its obligations to its Next Day shippers.

10. At times, inclement weather conditions preclude UPS from delivering its customary services to the public. For example, according to Bloomberg News in December 2009: "United Parcel Service Inc. stopped making pickups and deliveries in Washington, parts of Maryland, Delaware, New Jersey, Pennsylvania, West Virginia and Virginia on Dec. 19 due to

weather, the company said on its Web site: 'There may be some slight delays if roads have not been cleared,' said Michael French, a spokesman for Atlanta-based UPS. 'It will be contingent on how quickly city and county governments will be able to clear the roads.'"

11. Starke's wife gave birth to a baby girl on or about February 11, 2010. Starke sought to include the new addition under his Empire Blue Cross policy and doing so required that Stark act within a certain timeframe, failing which, Starke might or would lose his unfettered right to obtain healthcare coverage aforesaid for his daughter.

12. On February 16, 2010 Starke delivered a UPS Letter, weighing a few ounces and containing certain documentation concerning his daughter, to a UPS Authorized Agent at 4403 15th Avenue, Brooklyn, New York 11219, addressed to Empire Blue Cross in Albany New York (the "Shipment"). The UPS Authorized Agent transacted the intake of the Shipment through instantaneous electronic communication with UPS, which assigned through its proprietary software a Tracking Number, to wit: 1ZX498F00148207095, prior to consummation of the transaction. The Tracking Number is the means of tracking the progress of a Next Day Air Shipment through its journey from intake to ultimate delivery. Tracking information is accessible solely through iTrack It, a joint-venture of UPS, FedEx and other carriers.

13. In an effort to allow a margin of time within which to correct any deficiencies that Empire Blue Cross might identify in Starke's submission, Starke elected to purchase, at a premium, Next Day Air Early Delivery by 10:30 AM, costing $27.00 for the single envelope. Ordinary United States First Class Mail would have cost $1.73, while overnight to two-day money-back guaranteed United States Postal Service would have cost $13.65. UPS scanned its pickup of the Shipment from its authorized agent, the freight forwarder, at 3:51 PM on February 16, 2010.

4

14. On the morning of February 17th at abut 10:30 AM Starke called 1-800-PICK-UPS, which is the manner by which the UPS website instructed Starke to track his parcel, to get current status update on delivery. He gave pertinent information, i.e. Tracking Number, a UPS Letter, his name, his address, the name and address of consignee, and that it was shipped Next Day Air guaranteed 10:30 AM delivery. The UPS agent advised Starke that due to the Storm (discussed below) Starke's Parcel had not left the UPS facility on Foster Avenue in Brooklyn. She said that due to Storm conditions UPS was backed up by *on Foster Avenue alone* by 50,000 packages and they even had managers on the floor sorting through packages. She said to call back later for further update. Starke inquired as to whether he would be entitled to a refund if, as appeared likely, UPS failed to perform as promised. The agent did not know and suggested Starke inquire once the Parcel was delivered.

15. Starke called back approximately 4 hours later to get an update as to his Parcel. The UPS agent told him she would have "Albany" call him. Soon thereafter Starke received a call from Albany and he again gave pertinent information as requested by the UPS employee. Starke was told that the package was not received in Albany at that point in time. In response to Starke's question as to whether it was possible to yet deliver the Parcel to Empire Blue Cross on the 17th, UPS advised that delivery on the 17th was impossible because the Parcel had not then left Brooklyn. In fact UPS had made an entry in the Parcel's Scan History at 11:08 PM on February 16th as follows: "EMERGENCY CONDITIONS BEYOND UPS' CONTROL."

16. Later that night (of the 17th) Starke went online to track his Shipment and learned that it had left Brooklyn. Interested to know whether he would be assured a refund, Starke again called 1-800-PICK-UPS and he asked about delivery and refund. The UPS agent stated that the untimely delivery of Starke's Next Day Air delivery was a matter beyond UPS control. The

5

agent was adamant and, to the best of Stark's recollection, stated: " you will not get a refund." Starke complained, citing the premium paid and the importance of the delivery; but the UPS agent was again adamant, stating: "I'm sorry Sir . . . this is beyond UPS' control and you will not get a refund."

17. The Shipment reached Empire Blue Cross in Albany, New York on February 18, 2010 at 9:20 A.M. Starke has not received a refund.

18. The Storm had been widely forecasted by February 4, 2010, with the New York Times describing the onset of the Storm as follows: "Feb. 4 (Bloomberg) -- A winter storm watch was posted for New York City and a blizzard warning for southern New Jersey today as a system heading for the East Coast threatened to drop more than 2 feet of snow in the Washington-Baltimore area. The snowfall in New York City will begin after tomorrow's evening rush, tapering off the following morning, said Rick Castro, a spokesman for the National Weather Service in Upton, New York. Six to 8 inches (15 to 20 centimeters) is possible across most of the city, while 9 inches may fall in Brooklyn and Staten Island, he said.

19. By February 8, 2010, while still reeling from the February 4th inclemency, New Yorkers were warned to brace for a second onslaught: "Storm systems barreling across the country may bring as much as 20 inches (50 centimeters) of new snow to Washington and Baltimore starting late tomorrow, while New York may receive a foot, forecasters said. With the Washington-Baltimore area still digging out from a weekend storm that left record snowfalls in some areas, the latest blast of winter 'is going to be accompanied by heavy winds, which will make it feel worse, and across the Northeast that wind is going to last through the weekend,' said Tom Kines, a meteorologist with AccuWeather, Inc. A winter storm watch was posted today by the National Weather Service for New York, Long Island, southern Connecticut, Rhode Island

and southern Massachusetts. A winter storm warning was posted for Washington starting at noon tomorrow, and 10 to 20 more inches may fall, the agency said."

20. By February 11, 2010 the New York Times issued the following comment on the Storm: The powerful storm, which paralyzed the corridor from Washington to New York, also left behind a combination of strong winds, freezing temperatures and piles of snow that ensured a slushy, strenuous Thursday morning commute for the 50 million Americans left in its wake.

21. According to publicly available UPS releases, UPS employs a team of five meteorologists based in Louisville, Ky., specifically to study weather patterns such as high winds, thunderstorms, snowstorms, ice, hurricanes – anything that might close an airport or delay delivery. UPS also relies on the National Weather Service forecasts; but UPS meteorologists are, in addition, focused specifically on whether and to what extent given weather conditions will affect UPS airplanes.

22. UPS periodically runs commercials touting the abilities of their weather forecasters to predict storms and minimize the chance that a delivery would be disrupted by inclement weather. The Storm conditions that delayed Starke's delivery were predicted in local and national media, and in process, well in advance of February 16, 2010

23. The simultaneous sale of guaranteed Next Day Air Service without notice of the Storm-driven risk of non-timely delivery by UPS was deceptive and unconscionable; but neither Starke nor the class members may pursue state law consumer protection remedies due to the preemption by federal law of state regulations relating to prices, routes or services.

24. UPS as a carrier knew long before, and at the time, Starke went to its Authorized Agent on February 16, 2009 that it had an insurmountable backlog and would not, or would not likely, be able to perform its Next Day Air commitment to Starke in timely fashion.

Notwithstanding such knowledge UPS collected from Starke premium payments for both Next Day Air *and* Early Delivery (by 10:30 AM), and thereby knowingly placed a matter of utmost importance at undue risk.

25.     UPS breached its contract with Starke to deliver his Shipment to Empire Blue Cross by 10:30 AM on February 17, 2010.

26.     UPS breached it Guarantee contained in Section 47 of its Tariff, to deliver on time or refund upon request for not so delivering. Any effort to rely on express Tariff Exclusions to the Guarantee, i.e. disruptions in air or ground transportation networks, are inapplicable and may not be enforced where the carrier knew that disrupted air transport conditions was the status quo, and would continue, at the time its Shipper's paid money for Next Day Air Service.

27.     A study of the UPS website and other online information as of March 1, 2010 indicates that UPS did not notify the public, at any time during February 2010, of its inability to meet its Next Day Air commitments and, in fact, continued unabated during February 2010 to charge and receive premium payments from its customers for such undeliverable service. On information and belief, UPS has on no occasion declined to accept a customer's money for Next Day Air Service based upon disabling air transport or any other conditions, within the last 10 years at least. UPS thus has a de facto policy of non-disclosure as to its known, albeit occasional, inability to effect Next Day Delivery. Rather, UPS' policy is to issue refunds to a small percentage of those injured and entitled to refund, i.e. those who write or call UPS and demand or fight for the refund at issue.

**CLASS ACTION ALLEGATIONS**

28.     ***New York Shippers Class Description.*** Plaintiff brings this action on behalf of himself and all similarly-situated New York Area shippers who, during a class period of

8

February 8-18, 2010, paid for UPS Next Day Air Service as to Parcels shipped from anywhere in New York, to the extent such Parcels were not timely delivered to their ultimate destination, nor refund of transportation charges made, pursuant to the terms and conditions of Next Day (excluding Sundays) Air Service. Excluded from the class are any clams arising from loss or damage to any Parcel, the claims of any UPS officer, director, employee, any Judge assigned to this case and the chambers personnel of any such Judge. Plaintiff reserves the right to define the class more exactingly following discovery.

29. ***Affected Areas Shippers Class Description***: Plaintiff also brings this action on behalf of himself and all similarly-situated shippers in Affected Areas who, during a class period of February 8-18, 2010, paid for UPS Next Day Air Service, as to Parcels shipped from anywhere in Affected Areas, to the extent such Parcels were not timely delivered to their ultimate destination, nor refund of transportation charges made, pursuant to the terms and conditions of Next Day (excluding Sundays) Air Service. Excluded from the class are any clams arising from loss or damage to any Parcel, the claims of any UPS officer, director, employee, any Judge assigned to this case and the chambers personnel of any such Judge. Plaintiff reserves the right to define the class more exactingly following discovery.

30. ***Impracticability of Joinder.*** Upon information and belief, the number of New York and Affected Areas shippers who, during the relevant period, contracted with UPS to ship Parcels pursuant to the UPS Next Day Air Guarantee numbers in the tens of thousands. Joinder of all potential class members is thus impracticable.

31. ***Commonality.*** UPS acted and failed to act in ways that affect all members of the proposed classes similarly. Questions of fact are common to the class, as are legal questions respecting UPS liability, i.e. refund responsibility per Tariff, to all potential class members.

32. ***Typicality.*** Plaintiff's claims are typical of the claims of the proposed class as a whole because each of these shippers suffered a failure of consideration, i.e. Next Day Air Service, and has not received a refund per the UPS Tariff by which UPS and its shippers were bound. Further, UPS affirmatively denied Starke a refund, purportedly based upon "conditions beyond UPS control," which purported defense to refund would have class-wide applicability. Therefore, proof of Plaintiff's claims will similarly prove the claims of absent class members.

33. ***Fair and Adequate Representation.*** Plaintiff is capable of fairly and adequately protecting the interests of the class because his claims are common to the class and proof of those claims will prove the claims of absent class members. Plaintiff's interests are in harmony with the interests of other members of the class and are not adverse. Plaintiff's counsel has acted as and has been appointed class counsel in numerous class action lawsuits filed throughout the country involving the rights of small stakeholders large controversies.

34. ***Class Certification Appropriate Under Rule 23(b)(3).*** The questions of law and fact enumerated/raised in the counts below and requisite to recovery by all Class Members are not only common to all members of the respective classes, but also predominate over individualized issues of law or fact, which are essentially limited to the precise amount of damages owed to each class member, i.e. "transportation charges" per the Tariff. Some common questions of law and fact which will arise herein are:

   a. Whether and when UPS knew or had reason to know of disruptions in air transport conditions adversely affecting its ability to timely deliver Next Day Air Parcels from New York and other Affected Areas and, to a reasonable certainty, preventing it from doing so.

   b. Whether the breach of contract claims of Plaintiff and Class Members are preempted by Federal law, thereby requiring the application of Federal Common Law;

c. Whether, under applicable law, UPS may sell Next Day Air Service under conditions making timely performance impossible or nearly impossible, and thereafter, upon failure of performance, invoke a Tariff Exclusion, which, if applicable, gives UPS virtual immunity from Tariff provisions it voluntarily undertook to honor; and

d. The meaning and application of various sections of the UPS Tariff including, but not limited to, Section 47 thereof.

35. Other factors favoring the certification of this suit as a class action include:
    a. the amount of damages suffered by numerous individual shippers is sufficiently small that many individual shippers would not find it cost-effective to bring their own lawsuits;
    b. requiring individual shippers to prosecute separate actions would substantially impair or impede the ability of many to protect their interests because many of these individuals do not have the means or resources to pursue on an individual basis the type of claims involved here;
    c. there is no other lawsuit pending, to Plaintiff's knowledge, raising the same issues filed against Defendants in this litigation;
    d. it is desirable to concentrate the individual members' claims in one forum because, given the amount in controversy, to require these claims to be brought in separate forums would effectively prevent many individuals from bringing claims to recover their refunds; and
    e. no substantial or inordinate difficulties are likely to be encountered in managing this class action.

**COUNT I: BREACH OF CONTRACT (New York Shippers Class)**

36. Plaintiff Starke re-alleges paragraphs 1-35 as though fully rewritten.

37. Starke satisfied all conditions precedent to being entitled to a refund under Section 47 of the USP Tariff, *inter alia,* in that he telephoned UPS, demanded a refund and provided all pertinent information needed by UPS to verify his entitlement to a refund. Starke has

further complied with all notice and claims periods set forth in the Terms and Conditions and Service Guide, if any, relating to his refund.

38. UPS breached its Next Day Air contract with Starke, when it failed to timely deliver the Shipment and, thereafter, refused to refund the amount of Starke's transportation charges.

39. Starke and the class members were injured in that there was a failure of consideration as to their respective Next Day Air contracts with UPS.

40. Starke and the class are entitled to a refund of amounts paid by them, as transportation charges, in consideration of UPS Next Day Air Service.

**COUNT II: BREACH OF CONTRACT (Affected Areas Shippers Class)**

41. Plaintiff Starke re-alleges paragraphs 1-40 as though fully rewritten.

42. Starke satisfied all conditions precedent to being entitled to a refund under the USP Tariff, in that he telephoned UPS, demanded a refund and provided all pertinent information needed by UPS to verify his entitlement to a refund.

43. UPS breached its contact and Guarantee with Starke when it failed to timely deliver the Shipment and, thereafter, refused to refund the amount of Starke's transportation charges.

44. UPS may not claim any Exclusion under its Tariff Guarantee when, prior to the purchase by Starke and the Class members of Next Day Air Service, it was within UPS' knowledge that disrupted and disabling air transport conditions existed and would continue beyond the time of promised delivery.

45. Starke and the Class are entitled to recover their transportation charges paid in consideration of UPS Next Day Service.

**COUNT III: FEDERAL COMMON LAW CONTRCT (Affected Areas Shippers Class)**

46. In the alternative and to the extent the above claims are preempted under Federal Statutory Law, which Plaintiff is certain they ought not be, Plaintiff Starke re-alleges paragraphs 1-45 as though fully rewritten.

47. Starke satisfied all conditions precedent to being entitled to a refund under the USP Tariff, in that he telephoned UPS, demanded a refund and provided all pertinent information needed by UPS to verify his entitlement to a refund.

48. UPS breached its contract with Starke when it failed to timely deliver the Shipment and, thereafter, refused to refund the amount of Starke's transportation charges.

49. Starke and the class were injured in that there was a failure of consideration as to their respective Next Day Air contracts with UPS.

50. UPS may not claim any Exclusion under its Tariff Guarantee when, prior to the purchase by Starke and the Class members of Next Day Air Service, it was within UPS' knowledge that disabling air transport conditions existed and would continue beyond the time of promised delivery. Rather, tardiness of delivery akin to anticipatory breach was a virtual certainty at the time Starke and the other members of the Classes purchased Next Day Air Delivery Service from UPS.

51. Starke and the Class members are entitled to recover their transportation charges paid in consideration of UPS Next Day Air Service.

**WHEREFORE**, on his own behalf and on behalf of the classes he represents, Plaintiff Adam Starke demands judgment as follows:

    a. On Count I, judgment in an amount equal to the aggregate of the amount paid by New York Shippers Class members, as and for transportation charges, for UPS Next Day Air delivery, together with costs;

b. On Count II, judgment in an amount equal to the aggregate of the amount paid by Affected Areas Shippers Class members, as and for transportation charges, for UPS Next Day Air delivery, together with costs; and

c. On Count III,, in the alternative (should the Court rule that Starke's ordinary contract claims are preempted), judgment in an amount equal to the aggregate of the amount paid by Affected Areas Shippers Class members, as and for transportation charges, for UPS Next Day Air delivery, together with costs.

/s/Mark Schlachet
Mark Schlachet (MS2400)
3637 South Green Road, 2nd Floor
Beachwood, OH 44122
Telephone: 216-896-0714
Facsimile: 216-514-6406
mschlachet@clevelandnet.com
***Attorney for Plaintiff and Plaintiff Classes***

### ENDORSEMENT FOR JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

/s/ Mark Schlachet
Mark Schlachet (MS2400)
***Attorney for Plaintiff and Plaintiff Classes***